Thomas C. THOMPSON, et
al., Plaintiffs,

v.

ENSTAR CORPORATION, et
al., Defendants.

Roy M. HUFFINGTON, et al.,
Plaintiffs,

v.

ENSTAR CORPORATION, et
al., Defendants.

Court of Chancery of Delaware,
New Castle County.
Submitted: June 18, 1984.
Decided: June 20, 1984.
Revised: Aug. 16, 1984.

Richard L. Sutton, Paul P. Welsh, Kenneth J. Nachbar and Michael Houghton, Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs Roy M. Huffington et al.

Michael D. Goldman, James F. Burnett and Donald J. Wolfe, Jr., Potter Anderson & Corroon, Wilmington and Matthew Gluck and Carol Miller, Fried, Frank, Harris, Shriver & Jacobson, New York City, for plaintiffs Thomas C. Thompson et al.

Charles F. Richards, Jr., Edmund N. Carpenter, II and Jesse A. Finkelstein, Richards, Layton & Finger, Wilmington, for defendant Enstar Corp.

Bruce M. Stargatt, David C. McBride and Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington and William C. Sterling, Jr., Kenneth B. Forrest, Louis J. Barash and Marc Wolinsky, Wachtell, Lipton, Rosen & Katz, New York City, for Unimar defendants.

HARTNETT, Vice Chancellor.

This is my decision on the applications for preliminary injunctions which must be denied because the plaintiffs have not borne their burden at this preliminary injunction stage of showing the reasonable probability that the challenged acts of the defendants are not protected by the business judgment rule.

I

Two lawsuits have been filed challenging certain acts of the directors of Enstar Corporation ("Enstar"), a Delaware corporation. Both suits arise because of an ongoing proxy contest being waged in connection with the annual meeting of Enstar and because of a pending tender offer and merger proposal submitted by Unimar Company, and its associates ("Unimar") to the shareholders of Enstar.

The first suit in this Court (C.A. # 7641) was brought by Thomas C. Thompson et al. on May 25, 1984. Mr. Thompson is a holder of the second largest block of Enstar stock. The other suit (C.A. # 7643) was brought by Roy M. Huffington et al. on May 31, 1984. Mr. Huffington is the holder of the largest block of Enstar stock and it is he who commenced the proxy battle seeking to elect his slate of directors to the Board of Enstar.

The annual meeting will be held on June 21, 1984. The tender offer will be consummated on June 26, 1984. All agree that any action taken by this Court in response to the applications for preliminary injunctions must occur before the annual meeting when it is expected the Huffington group will elect a new board. Extensive and expedited discovery was held and the matter was heard by this Court on June 18, 1984. The two suits were consolidated for purposes of argument and discovery only.

The two days the Court has to consider over 340 pages of briefs (not counting the appendices) and the thousands of pages of the record, do not permit a recitation of all the facts or all the many contentions of the parties. A brief summary of the facts and a consideration of the essential issues will therefore have to suffice.

The plaintiffs allege a wide spectrum of complaints against the officers and directors of Enstar Corporation. Apparently in response to the perception that Mr. Huffington would win the proxy battle, the directors—a short time ago—commenced somewhat frantic efforts to sell the assets of Enstar. Indeed, now all agree that in the best interest of the shareholders the assets should be sold. The Huffington plaintiffs desire that the sale be postponed until after the shareholders meeting when, presumably, they will be in charge. They also object to an agreement recently entered into by the directors of Enstar on

May 22, 1984 to accept a tender offer of Unimar Co. and to a voting trust agreement and by-law amendments (termed "lock-up agreements") entered into by the directors on that date, at the request of Unimar, to help assure that the tender offer is approved by the shareholders of Enstar. The Thompson plaintiffs now only seek to set aside the lock-up agreements.

The plaintiffs allege that the directors of Enstar "became so caught up in the adversary atmosphere of a proxy contest as to subject their corporation and its shareholders to loss by a quick and improvident sale."

Some of the alleged acts of the directors of Enstar which the plaintiffs believe to be egregious are:

1. The acceptance of an unfair tender offer from Unimar. Plaintiffs allege it is unfair because it is for an unfair price and because it is structured so that those who do not tender their shares will be subject to a later cash-out merger at a lesser price.

2. The adoption of a voting trust agreement and by-law provisions which assure Unimar's voting control of Enstar Indonesia, a partnership in which Unimar is one of several partners, regardless of whether Unimar's tender offer is accepted by 51% of the shareholders of Enstar.

3. The acceptance of the Unimar offer even though the directors believed it was · inadequate.

4. The imposition of an arbitrary deadline for the receipt of tender offers or offers to purchase all the assets of Enstar.

5. The action of the directors in attempting to sell Enstar before the annual meeting at which time the results of a proxy fight would become known.

6. The failure of the directors to keep all the potential bidders fully informed.

7. The manipulation of the annual meeting date to enable the sale to Unimar before the annual meeting.

8. The adoption of certain devices termed "Doomsday Devices" by the board to discourage sale of the corporation to other than Unimar.

9. The self-interest of Mr. Honig, the Chief Executive officer of Enstar in the transaction.

10. The failure of the directors to fully disclose to the shareholders of Enstar with complete candor all of the germane facts concerning the tender offer and proxy contest.

Defendants do not dispute that the directors have agreed to accept the tender offer of Unimar and have agreed to the lock-up agreements at Unimar's request. They maintain that they have only acted in the best interests of the corporation, that all of their acts were necessary to assure the best interests of the shareholders of Enstar, and that therefore all of their decisions are protected by the presumption of propriety afforded by the business judgment rule. They point out that 10 of the 12 directors of Enstar are outside independent directors with no self-interest in the outcome of the sale or this litigation.

## II

These matters are before me as applications for a preliminary injunction. A preliminary injunction is an extraordinary remedy which may be granted only if the applicants demonstrate a reasonable probability of ultimate success on the merits at a final hearing, if the failure to issue an injunction will result in immediate and irreparable injury, and if the balance of hardships weighs in applicant's favor. *Weinberger v. United Financial Corp.*, Del.Ch., 405 A.2d 134, 137 (1979); *Sandler v. Schenley Indus., Inc.*, Del.Ch., 79 A.2d 606, 610 (1951); *Allied Chemical & Dye Corp. v. Steel & Tube Co.*, Del.Ch., 122 A. 142 (1923).

◼ The heavy burden of establishing these prerequisites rests on the plaintiffs. That burden cannot be satisfied merely by showing that there exists a dispute and that plaintiffs or others may be injured; rather, plaintiffs must clearly establish each of the required elements, and injunc-

tive relief "will never be granted unless earned". *Lenahan v. National Computer Analysts Corp.*, Del.Ch., 310 A.2d 661, 664 (1973); *Gimbel v. Signal Companies, Inc.*, Del.Ch., 316 A.2d 599, 603, *aff'd per curiam*, Del.Supr., 316 A.2d 619 (1974).

The present record does not support the plaintiffs' claim, at least at this stage of the suit, that there is a reasonable probability that the plaintiffs will prevail on the merits nor have the plaintiffs met their burden of showing that irreparable harm will result if a preliminary injunction is not granted. The applications for preliminary injunctions, therefore, must be denied.

### III

The defendants rely most heavily upon the protection afforded them by the business judgment rule. As the Delaware Supreme Court recently stated in *Aronson v. Lewis*, Del.Supr., 473 A.2d 805 (1984):

> "The business judgment rule is an acknowledgment of the managerial prerogatives of Delaware directors under Section 141(a). It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Absent an abuse of discretion, that judgment will be respected by the courts. The burden is on the party challenging the decision to establish facts rebutting the presumption."

The Court also stated:

> "... to invoke the rule's protection directors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them. Having become so informed, they must then act with requisite care in the discharge of their duties. While the Delaware cases use a variety of terms to describe the applicable standard of care, our analysis satisfies us that under the business judgment rule director liability is predicated upon concepts of gross negligence. ..."

■ The burden is therefore upon the plaintiffs to show that there is a reasonable probability that the directors' acts are not protected by the business judgment rule. The plaintiffs have not borne their burden of showing that the 10 outside directors were in any way disqualified to act independently and they are therefore entitled to the presumption of propriety afforded by the rule unless it can be shown that they acted improperly. No such showing has been made.

### IV

■ A critical issue is the act of the directors of Enstar in accepting the Unimar offer on May 22, 1984—a month before the annual meeting. In view of what has occurred since then, it is not unlikely that other bona fide offers would have surfaced (and perhaps have now surfaced) if the opportunity to present bids had been kept open a short time longer.

The defendants urge that the decision faced by the board on May 22, 1984 is a classic example of the type of decision which is protected by the business judgment rule. The board, which consisted of 12 members—of whom 10 were outside directors—faced the prospect that after an extensive search for potential buyers of Enstar for over a month, and after contact with over 100 prospects, and after an in-depth review by 26 seriously interested buyers, only one firm offer was before the board on May 22, 1984. That offer was the offer of Unimar. The board also faced the prospect that on June 21, 1984 it would likely be voted out of office by the Huffington group and there was no assurance that Huffington would proceed to attempt to obtain offers for the corporation which, all agreed, should be sold in the best interests of the shareholders of Enstar. In fact, there was at least some reason to believe that Huffington, who had working control of Enstar Indonesia, might be content to let the corporation continue in operation or might merely sell off some of its assets.

I find therefore that it is at least probable that the directors had reasonable justification to believe that time was of the essence and that if they were to fulfill their fiduciary duties to the shareholders they had to act promptly.

The acts of May 22, 1984, however, are complicated by the fact that the existence of a possible new bidder became known on that day.

The plaintiffs cite *Wilmington Trust Co. v. Coulter*, Del.Supr., 200 A.2d 441 (1964) and *Thomas v. Kempner*, Del.Ch., C.A. No. 4138 and 4174, Marvel, Ch. (Jan. 5, 1979), 5 Del.J.Corp.L. 131, for the correct legal proposition that a fiduciary faced with two competing bids for an asset must accept the higher bid.

The issue here, however, is not as clear as in the two cited cases. There was not a competing bid as such. At most there was an indication of Tesoro of an interest in acquiring Enstar. Tesoro had been contacted previously by Enstar, had indicated no interest, had then shown some interest but had not promptly responded to the overtures by Morgan Stanley & Co., Incorporated, which was acting on behalf of Enstar. The proposal was also indefinite as to material terms and Tesoro indicated it would take it another 3 to 5 days to work up a firm proposal.

The critical issues, therefore, are whether the directors of Enstar had a reasonable basis to believe on May 22nd that the Tesoro interest was valid and would timely materialize into a firm offer and whether they had a reasonable basis to believe that Unimar was likely to withdraw its offer after May 22nd—thus leaving no viable offer for Enstar.

Regrettably, the evidence as to whether May 22nd was the last day on which the directors could act is not as clear as I would prefer. The evidence of the critical time limit is disputed and somewhat unclear from the affidavits. Although two directors of Enstar admitted they were not aware of a firm deadline, Mr. Gleacher and Mr. Stynes of Morgan Stanley communicated to certain members of the board of Enstar that there was a risk that Unimar would walk away if their proposal was not accepted by May 22nd. Also, Mr. Buford, a director of Enstar, stated, "They [Unimar] wanted to conclude it [the tender offer] by the 20th of June. That was the proposal before us [on May 22]." He further stated, "The board was told that the choice must be made now [on May 22]." And, Mr. Bridges, one of the Enstar directors who testified there was no firm "deadline" also stated that he thought that the possibility of Unimar withdrawing its offer was one of the factors to be considered on May 22nd.

It now appears that on June 12, 1984 an offer was made by Huffington and others which might result in a slightly higher price for the Enstar stock. Not all of the terms of the June 12th offer are completely clear, however, and it is contingent upon the lock-up provisions not being in effect.

The test of whether the Enstar board acted reasonably on May 22nd, however, is not whether something happened on June 12th which, in hindsight, may show that the directors of Enstar should have delayed. The judgment of the directors must be measured on the facts as they existed on May 22, 1984. From a review of the entire (but necessarily limited) record, I am of the opinion that the directors acted after receiving all the material information they reasonably needed to make an informed decision and they acted with sufficient care to meet the mandate of *Aronson v. Lewis*, supra.

The burden is upon the plaintiffs to show that the directors acted improperly. This they have failed to do. While hindsight might enable me to conclude that if the directors had waited, other offers might materialize, and while I might, in the exercise of my judgment, have decided on May 22nd to postpone the decision, that is not the test. Courts cannot substitute their judgment for the rational judgment of the directors.

The plaintiffs have, therefore, not sustained their burden of showing the reasonable probability that the directors' decision to accept the tender offer of Unimar on May 22nd was not protected by the business judgment rule.

### V

■ Another act of the directors of Enstar which is troublesome is their agreeing to accede to the demand of Unimar, as a condition of its making a tender offer, to lock-up voting control of Enstar Indonesia. This was done by the adoption of a Voting Trust Agreement and by-law amendments which have the effect of giving voting control to Unimar over Enstar Indonesia—a partnership in which Enstar is a partner and in which Unimar has an interest through other parties. It is undisputed that Enstar Indonesia is the single most valuable asset of Enstar.

Although the agreement with Unimar permits Enstar to receive and accept other tender offers, the lock-up provisions remain in effect regardless of whether Unimar is the eventual successful bidder for the shares of Enstar. Thus Unimar has already received what it craves the most—voting control over the Indonesian partnership.

Plaintiffs correctly point out that the lock-up provisions are likely to chill the offers of certain other possible makers of tender offers. They also assert that the granting of the lock-up provisions are a waste of corporate assets, a breach of fiduciary duty, and illegal under Delaware law.

Obviously the existence of the lock-up provisions act to chill offers from at least some other potential bidders. In fact, the somewhat imprecise offer made on June 12, 1984 by Huffington and others at a slightly higher price is contingent upon the lock-up provisions being set aside.

Lock-up agreements have been justifiably criticized. They often prevent open bidding for assets which, of course, is usually in the best interests of the shareholders. They also often infringe on the voting rights of shareholders. They therefore must be given careful scrutiny by a court to see if under all the facts and circumstances existing in a particular case they are fair to the shareholders.

Voting trusts are not illegal per se, however, and if they are legally entered into in accordance with the statutes, if the purpose is not one the law deems illegal, if they are not wrongful, and if they are in the best interests of the shareholders, they will be upheld. *Perry v. Missouri-Kansas Pipe Line Co.*, Del.Ch., 191 A. 823 (1937); *Adams v. Clearance Corporation*, Del. Supr., 121 A.2d 302 (1956).

The test of whether a lock-up provision should be upheld is whether management acted reasonably. See: Note, *Lock-up Options—Toward a State Law Standard*, 96 Harvard Law Review 1068, 1082 (1983).

While it is a close call, I find from all the facts and circumstances, that the plaintiffs have not sustained their burden of showing a reasonable probability that the approval of the lock-up agreements was not fair to the shareholders or that the directors acted unreasonably in adopting them.

I find that it appears from the record before me that the directors acted reasonably when faced with the unusual factual situation present. They had only one bona fide offer on May 22, 1984 after they had made sufficiently adequate efforts to seek other offers. The only offer was contingent upon the adoption of the lock-up provisions. The directors were also faced with the June 21st annual meeting deadline and the prospect that after that date the value of the stock might plummet. The offer was also in the price range which had been suggested by the directors' investment advisors. Indeed, the price was likely to be much greater than would be the values received if the corporation was liquidated. The price offered—$18 per share—represented a substantial premium over the historical market value which has been in the $12–$14 range. (The tender offer price has now been raised to $20 per share.)

**584**

While reasonable men may differ as to whether the offer was the best which might ever materialize, the plaintiffs have not met their burden of showing that it was unreasonable for the directors to conclude that, in their judgment, the offer of Unimar was the best which could be obtained under the circumstances and that it was possible it might be soon withdrawn, thus leaving the shareholders of Enstar to face the prospect of liquidation for a much lesser price and at some time in the distant future. The adoption of the lock-up provisions was a necessary prerequisite to Unimar making its tender offer and therefore it is probable that it was reasonable for the directors to accede to Unimar's demand under the unusual circumstances present. Needless to say, if the subsequent offers had been made sooner a different result might be reached.

The plaintiffs have therefore not borne their burden of showing the reasonable probability that the lock-up provisions should be set aside.

The plaintiffs also assert that the lock-up provisions were granted for an inadequate consideration and were therefore wasteful. On the present record I cannot conclude that the plaintiffs have shown the reasonable probability that the provisions were wasteful. Cf. *Michelson v. Duncan*, Del. Supr., 407 A.2d 211 (1979).

### VI

Plaintiffs, as might be expected, also challenge the disclosures made by the defendants in the proxy materials. While some of the disclosures could have been better, I find from a review of all the materials (especially the Supplement to the Proxy Statement mailed on June 13) that there has been no violation of the requirement of a full and complete disclosure, with complete candor, of all the material information which is needed by a shareholder of Enstar to make an informed decision. *Lynch v. Vickers Energy Corp.*, Del.Supr., 383 A.2d 278 (1978).

### VII

The numerous other allegations and charges of the plaintiffs remain unproven. The plaintiffs have failed to sustain their burden of showing their reasonable probability of success on the merits as to any of their other allegations or claims.

The applications for preliminary injunctive relief therefore must be denied. IT IS SO ORDERED.