Ronald V. APRAHAMIAN, Ronald L. Holden, Andover Group, Donald C. Carner, L. Wayne Greenberg, Robert E. Raitz, William A. Reppy, Jr., and the Committee for Full Value of HBO & Company, Plaintiffs,

v.

HBO & COMPANY, Walter S. Huff, Jr., John M. Clark, Jr., John W. Lawless, Larry G. Gerdes, Donald L. Lucas, and James V. Napier, Defendants.

Civ. A. No. 8989.

Court of Chancery of Delaware, New Castle County.

Submitted: May 11, 1987.
Decided: May 14, 1987.
Revised: May 28, 1987.

Grover C. Brown, Henry N. Herndon, Jr., Edward M. McNally and Lewis H. Lazarus, Morris, James, Hitchens & Williams, Wilmington (Hogan & Hartson, Washington, D.C., of counsel), for plaintiffs.

Charles S. Crompton, Jr., Donald J. Wolfe, Jr., William J. Marsden, Jr., Kathleen T. Furey, and Laurie A. Silverstein, Potter, Anderson & Corroon, Wilmington (Hansell & Post, Atlanta, Ga., of counsel), for defendants.

HARTNETT, Vice Chancellor.

Plaintiffs, in effect, seek a preliminary injunction preventing defendants from further postponing the annual meeting of the stockholders of HBO & Company ("HBO"), a Delaware corporation, which was originally scheduled to be held on April 30, 1987, but has been rescheduled by the directors for September 22, 1987. I find that the meeting must go forward.

I

In the brief time available to consider this matter, it is not possible to set forth all the background facts, but the essential facts, which are uncontroverted, are as set forth.

On February 10, 1987 the Board of HBO designated that the annual meeting of the corporation be held on April 30, 1987, at 9:00 a.m., with March 15, 1987, as the record date for determining the stockholders entitled to vote. Public announcement of the meeting was made on March 20, 1987, with the distribution of the annual meeting proxy materials by the corporation. Management recommended reelection of the incumbent Board.

On March 28, 1987, plaintiffs formed a committee to oppose the reelection of the six directors of the corporation and on March 30, 1987, the Committee filed its preliminary proxy solicitation materials with the Federal Securities and Exchange Commission, proposing an alternate slate of directors. On April 10, 1987, the Committee mailed its initial proxy solicitation materials in which it proposed its own slate of directors and proposed a program which would allegedly maximize the value of the corporation by the creation of a special committee which would propose transactions, including the possible sale of the corporation.

The incumbent directors of the corporation, who along with the corporation are the defendants, thereupon issued additional proxy materials opposing the proposals and opposing any near term actions to increase the value of the stock of the corporation.

On Saturday, April 25, 1987, three business days before the scheduled date of the annual meeting, the incumbent Board of HBO decided to embrace plaintiffs' platform and undertook to convince the stockholders of the corporation that the Board would now pursue a plan similar to plaintiffs' and that the present management was better qualified to successfully complete a plan than would be the plaintiffs.

On Monday, April 27, 1987, the incumbent directors placed an advertisement in *The Wall Street Journal* announcing that they had decided to appoint a special committee of two incumbent directors to seek a sale of the corporation or propose other transactions which would enhance the value of the stock of the corporation.

In the late afternoon of April 29, 1987 (the day before the scheduled date for the annual meeting), the directors received information from their proxy solicitor that the election result was too close to call. At the same time, plaintiffs were receiving reports that they would win.

The incumbent Board, upon receiving the preliminary report of its proxy solicitor, acted to postpone the annual stockholders meeting until September 22, 1987, with an August 1987, record date.

The previous annual meeting was held on September 22, 1986, only seven months ago, but the traditional date for the annual meeting of the corporation has been in April.

Almost two years ago, in July of 1985, defendant Walter S. Huff, Jr., the present Chairman of the Board and a director of HBO, sold 500,000 shares of the corporation's stock to the corporation for $23.125 per share. Ever since that time the value of the stock has declined—eventually reaching a low of $8.50 per share during December of 1986.

If the annual meeting does not convene by May 15, 1987, the proxies submitted by the stockholders may expire because of the provisions of 8 Del.C. § 213 which provide that a record date shall not be fixed for a date more than 60 days before the date of the annual meeting. It is therefore argued by plaintiffs that if the annual meeting does not convene before May 16, 1987, a new record date, will be fixed which will invalidate the proxies solicited by plaintiffs.

Plaintiffs seek a preliminary injunction preventing defendants from continuing to postpone the convening of the annual meeting past May 15, 1987.

## II

Plaintiffs rely heavily on *Gries v. Eversharp, Inc.*, Del.Supr., 69 A.2d 922 (1949) in which the Delaware Supreme Court held that the directors of a corporation could not postpone the scheduled annual meeting as long as it was possible to hold the meeting at the time originally scheduled. The Court pointed out that a different holding would "authorize directors to change a meeting date for any year, at any time in advance of a meeting, for any reason of convenience to the directors, provided no fraud, bad faith, or improper motive was shown."

Defendants assert that the holding in *Gries* is no longer applicable because of subsequent amendments to the statutes relating to annual meetings. The amendments to the statutes since *Gries*, however, merely give greater flexibility to the board in selecting the date and place for the annual meeting and are still silent as to whether the directors have the power to postpone an annual meeting once the date has been designated.

8 *Del.C.* § 211 now provides that "an annual meeting of stockholders shall be held for the election of directors on a date and at a time designated by or in the manner provided in the bylaws." HBO's bylaws provide that the annual meetings of the stockholders shall be held at such place, within or without the State of Delaware, in April or as shall be provided from time to time by the board of directors. The amendments to the statutes since *Gries* therefore do not change its holding.

Defendants also urge that the holding in *Gries* has been superseded by recent Delaware cases ascribing new vitality to the business judgment rule especially where an independent committee recommends a course of conduct. See, *Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701 (1983); and *Unocal Corp. v. Mesa*, Del.Supr., 493 A.2d 946 (1985).

■ Defendants point out that the postponement of the annual meeting was recommended by a special committee recently appointed by the incumbent board to examine alternatives for maximizing stockholder value and therefore the court should defer to its recommendation. This argument is not valid, however, because the special committee consisted of two incumbent directors, both of whom are seeking reelection. They are obviously interested in the outcome of the election and the business judgment rule cannot be a shield as to acts taken by an interested director. *Aronson v. Lewis*, Del.Supr., 473 A.2d 805 (1984).

In terming these directors "interested" I am not ascribing any improprieties to them. A candidate for office, whether as an elected official or as a director of a corporation, is likely to prefer to be elected rather than defeated. He therefore has a personal interest in the outcome of the election even if the interest is not financial and he seeks to serve from the best of motives.

■ The corporate election process, if it is to have any validity, must be conducted with scrupulous fairness and without any advantage being conferred or denied to any candidate or slate of candidates. In the interests of corporate democracy, those in charge of the election machinery of a cor-

poration must be held to the highest standards in providing for and conducting corporate elections. The business judgment rule therefore does not confer any presumption of propriety on the acts of the directors in postponing the annual meeting. Quite to the contrary. When the election machinery appears, at least facially, to have been manipulated, those in charge of the election have the burden of persuasion to justify their actions.

I, therefore, hold that the holding in *Gries* is still binding on this court.

### III

In *Gries* the court did not address the issue of whether an annual meeting, after being designated, could be postponed if it was in the interests of the stockholders.

This issue, however, was faced in *Steinberg v. American Bantam*, W.D.Pa., 76 F.Supp. 426 (1948), *app. dis.*, 3rd Cir., 173 F.2d 179 (1949), and that court held that an annual meeting could be postponed if necessary in the interests of the stockholders. See also, *Thompson v. Enstar*, Del.Ch., 509 A.2d 578 (1984).

■ The burden of persuasion, however, must be upon those seeking to postpone the annual meeting to show that the postponement is in the best interests of the stockholders. The incumbent directors here assert that the annual meeting must be postponed because of the need of the stockholders to examine the incumbents' last-minute proposal, and because they will appoint a special committee to seek the enhancement of the value of the corporation. They also urge that they are better qualified to oversee the transactions necessary to enhance the value of the corporation and that plaintiffs (or some of them) have interests which will jeopardize their impartiality as board members.

■ I quite agree with defendants that it is vitally important that stockholders be fully informed when voting for directors. 5 FLETCHER *Cyclopedia of Corporations* § 2008.

Here, however, the incumbent directors' belated plan is not substantially different from the plan put forth by the plaintiffs. If the incumbent directors were truly sincere in their desire to make sure that the stockholders are fully informed before voting, they would have postponed the annual meeting at the time they put forth their new proposal on April 25 and not have waited until the evening before the meeting date.

Defendants have had ample opportunity to advise the stockholders about the relative qualifications of the competing slates and have done so. While it appears that some of the plaintiffs may be motivated by a desire to purchase the corporation for themselves, this does not seem to be much different from Mr. Huff's actions in selling his shares to the corporation in 1985.

It is also obvious that the stock is now heavily owned by sophisticated institutional investors and arbitrageurs who are likely to be well-informed about what is happening in this on-going proxy contest.

■ Incumbent directors do not have any preemptory right to continue to serve as directors. The present record does not reveal that one proposed slate of directors is any better, or more sincerely interested in the welfare of the stockholders, than is the other.

There is therefore no reason evident in the present record to have the annual meeting postponed.

### IV

Defendants also rely heavily on the unreported decision in *Huffington v. Enstar*, Del.Ch., C.A. No. 7543–NC, Longobardi, V.C. (April 25, 1984). In that opinion the court refused to require the directors of Enstar to reinstate a stockholders meeting scheduled but later postponed. An unreported decision, while entitled to great deference, is not necessarily *stare decis. State v. Phillips*, Del.Ch., 400 A.2d 299, 308 (1979). This is especially so as to issues not fully considered or discussed. In *Enstar* the court stated:

"Applying the principles of *Schnell [v. Chris–Craft Industries, Inc.*, Del.Supr., 285 A.2d 437 (1971),] and *Lerman [v.*

*Diagnostic Data, Inc.*, Del.Ch., 421 A.2d 906 (1980),] to the facts of the case *sub judice*, one must consider that the lengthening of time in which to conduct the proxy contest must be viewed in the context of the particular circumstances of this case. In other words, the *Schnell* principle could be applicable in a time shortening or a time lengthening situation. Admittedly, if the action of the Board in this case is to be condemned, it must be based on attendant circumstances that make it reasonably probable to assume that management intended to frustrate the vote of dissident stockholders."

As I read the opinion, it merely holds that stockholder meeting dates can be changed for cause. Cf. *Steinberg v. American Bantam*, supra, and *Tweedy Browne & Knapp v. Cambridge Fund*, Del.Ch., 318 A.2d 635 (1974). In any event *Enstar*, an opinion of this court, cannot overrule the Delaware Supreme Court's decision in *Gries*. I therefore do not find that the ruling in *Enstar* compels me to allow the annual meeting of HBO to be postponed.

### V

■ Defendants' reliance on 8 *Del.C.* § 222(c) is also misplaced. That subsection states:

"(c) When a meeting is adjourned to another time or place, unless the bylaws otherwise require, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting the corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than 30 days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting."

This language obviously refers to an adjournment after a meeting has convened and is not relevant to the issue of a postponement of a meeting after it has been designated, but before it is convened.

### VI

■ In order to prevail at the preliminary injunction stage plaintiffs bear the burden of showing that there is a reasonable probability that they will prevail on the ultimate merits of their claims, that they will suffer irreparable harm if the relief is not granted and that the hardship to the defendants, if the relief requested is granted, does not outweigh the hardship to plaintiffs if the relief is denied. *Bayard v. Martin*, Del.Supr., 101 A.2d 329 (1953); *Gimbel v. Signal Companies*, Del.Ch., 316 A.2d 599, *aff'd*, Del.Supr., 316 A.2d 619 (1974); *Wylain, Inc. v. TRE Corp.*, Del. Ch., 412 A.2d 338 (1979), *app. ref.*, 411 A.2d 611.

The uncontroverted facts show that the incumbent directors, having designated the date for the annual meeting and having solicited proxies on their behalf, on the eve of the meeting, upon learning that they might be turned out of office, postponed the meeting for several months. An examination of the uncontroverted facts does not show that any significant interests of the stockholders will be served by the postponement. Plaintiffs have therefore more than borne their burden of showing the reasonable probability of success on the merits.

Plaintiffs have expended considerable sums of money on this proxy contest. If the meeting is postponed, arguably, the proxies solicited and returned in good faith by the stockholders will become void and a postponement may well defeat the efforts of plaintiffs and the will of the majority of the stockholders. Irreparable harm may be assumed in such a case.

Finally, there is little possibility of hardship to the individual defendants. The incumbent directors have no vested right to continue to serve as directors and therefore will suffer no harm if they are defeated. If the will of the stockholders is thwarted, however, there may be considerable hardship to the stockholders and their corporation.

Plaintiffs therefore are entitled to a preliminary injunction enjoining defendants

from further postponing the annual meeting.

The real issue here, of course, is not when the annual meeting will convene but rather whether the proxies solicited by plaintiffs will be rendered void on May 16, 1987.

The sudden postponement of the annual meeting and this resulting litigation has obviously left some stockholders bewildered. In order to protect the interests of all the stockholders (which both sides claim is their primary interest), I will direct that the annual meeting be convened on May 15, 1987 to protect the record date and then be immediately adjourned without any further action being taken until the meeting reconvenes. The meeting shall be reconvened not later than June 3, 1987, after at least 10 days' notice to all the stockholders. Upon the reconvening of the annual meeting, the election and other business properly before the meeting shall be completed.