**McKESSON CORPORATION, Plaintiff, Counterclaim–Defendant,**

v.

**Howard DERDIGER, Defendant, Counterclaim–Plaintiff.**

**Civil Action No. 19037.**

Court of Chancery of Delaware, New Castle County.

Submitted: Sept. 14, 2001.

Decided: Jan. 10, 2002.

Anthony W. Clark and Paul J. Lockwood, of Skadden, Arps, Slate, Meagher & Flom LLP, Wilmington, Delaware, Attorneys for Plaintiff, Counterclaim–Defendant McKesson Corporation.

Ronald A. Brown, Jr., of Prickett, Jones & Elliott, Wilmington, Delaware; of Counsel: Arthur T. Susman, of Susman & Watkins, Chicago, Illinois, Attorneys for Defendant, Counterclaim–Plaintiff Howard Derdiger.

## OPINION

CHANDLER, Chancellor.

Plaintiff McKesson Corporation ("McKesson" or the "Company") seeks a declaratory judgment acknowledging the validity, under § 213(a) of Delaware's General Corporation Law ("DGCL"), of the May 25, 2001 record date McKesson set in connection with its July 25, 2001 annual shareholder meeting ("Annual Meeting"). Section 213(a) concerns the setting of a record date that establishes those stockholders entitled to vote at a particular shareholder meeting. The part of § 213(a) relevant to this action provides:

In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stock-

holders or any adjournment thereof, *the board of directors may fix a record date*, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the board of directors, and *which record date shall not be more than 60 nor less than 10 days before the date of such meeting.*[1]

Defendant Howard Derdiger ("Derdiger") challenges the validity of the record date McKesson set for its Annual Meeting. Specifically, he alleges that McKesson's May 25, 2001 record date violated § 213(a) because that date was *sixty-one days* before the July 25, 2001 Annual Meeting date, *i.e.*, one day outside the statutory *sixty-day* maximum. Based on this assertion, Derdiger contends that all actions taken at the Annual Meeting are void. For the reasons set forth later in this Opinion, I conclude that May 25, 2001 was not a valid record date for McKesson's July 25 shareholder meeting. Thus, McKesson did not comply with § 213(a) of the DGCL. I also conclude, however, that the actions taken at the Annual Meeting are, nonetheless, valid.

## I. BACKGROUND FACTS [2]

McKesson is a Delaware corporation with its principal corporate office in San Francisco, California. Defendant Derdiger is a stockholder of McKesson. On June 13, 2001, McKesson mailed copies of its proxy statement ("Proxy Statement") to its stockholders informing them of its Annual Meeting, scheduled for July 25, 2001. McKesson set the record date for stockholders eligible to vote at the Annual Meeting to be the close of business Friday, May 25, 2001, the day before the Memorial Day weekend. Due to the holiday, both exchanges trading McKesson stock, the New York Stock Exchange and the Pacific Stock Exchange, were closed from May 26 to May 28. Consequently, the parties agree that the identity of McKesson's record stockholders on May 25 remained identical until the Exchanges reopened on May 28.

During the week of July 9, 2001, Derdiger's counsel reviewed the Proxy Statement designating May 25, 2001 as the record date for the Annual Meeting. On July 17, 2001 Derdiger's counsel delivered a letter to McKesson asserting that the record date failed to comply with the sixty-day requirement of § 213(a). In addition, this letter requested that McKesson's Board reschedule the Annual Meeting and redistribute proxy materials to the stockholders who would be eligible to vote under the new record date. In response to the defendant's July 17 letter, McKesson's counsel delivered a letter, dated July 23,

---

**1.** 8 *Del. C.* § 213(a) (emphasis added). The full text of this code section is as follows:

(a) In order that the corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the board of directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the board of directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the board of directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the board of directors may fix a new record date for the adjourned meeting.

**2.** All of the relevant facts are undisputed. *See* Stipulated Facts Agreement, Docket Item No. 5.

2001, to Derdiger's counsel, insisting that the May 25 record date complied with § 213(a) and notifying Derdiger of the Company's intention to go forward with the Annual Meeting as scheduled. On July 24, 2001, the day before the Annual Meeting, Derdiger's counsel faxed a reply to McKesson's July 23 letter explaining his concern that the meeting, if held as scheduled, would be void for statutory non-compliance. As a result, any actions taken at the meeting would also be void, thereby exposing McKesson to potential "significant harm" in the future.[3] No response to defendant's July 24 letter was made and on July 25, 2001 McKesson held its Annual Meeting. Although McKesson's counsel asserts in his brief that the three management proposals were approved overwhelmingly and the three stockholder proposals were disapproved by wide margins,[4] the parties have stipulated only that the inspector of elections certified "certain voting" results following the meeting.[5]

In order to remove any uncertainty as to the legal validity of actions taken at the Annual Meeting on July 25, 2001, McKesson brought this action against Derdiger.[6] The Company seeks a declaratory judgment affirming both its compliance with § 213(a) and the validity of all actions taken during the Annual Meeting. McKesson moved for summary judgment pursuant to Chancery Rule 56.

Derdiger, in turn, moved to dismiss McKesson's complaint for failure to state a claim upon which relief can be granted pursuant to Chancery Rule 12(b)(6). He also moved for summary judgment on his cross-claim, asking the Court to declare that the record date for McKesson's July 25, 2001 annual meeting did not comply with § 213(a) and, accordingly, that the actions taken at the meeting are void and invalid.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

The purpose for disposing of a case on a motion for summary judgment under

3. Compl., Ex. C (July 24, 2001 Letter from Derdiger's counsel to McKesson's counsel) (warning that as a result of a determination that the May 25, 2001 record date did not comply with § 213(a) and, therefore, that any actions taken at the July 25, 2001 Annual Meeting were void, "someone could assert that seven board seats will need to be filled at next year's annual meeting. Also, the stockholders whose proposals are being submitted could assert claims in connection with the failure to legally submit their proposals").

4. *See* Pl.'s Opening Br. at 5–6.

5. *See* Def.'s Answering Br. at 3; *see also* Stipulated Facts Agreement, p. 3, at 11 a. and b. The facts stipulated to at 11 a. and b. of the Stipulated Facts Agreement indicate that *as certified* by the inspector of elections McKesson's characterizations of the voting results were accurate. In his brief opposing plaintiff's motion for summary judgment, however, Derdiger asserts that just because "certain

results were certified does not prove that those were in fact the results." Def.'s Answering Br. at 3. As my holding in this case does not rest on the truth of those results, I do not address defendant's insistence on the right to take discovery on that issue should it have been determinative.

The following items were on the agenda for McKesson's Annual Meeting: electing three directors to three-year terms; approving an amendment to the Restated Certificate of Incorporation to change the company's name from McKesson HBOC, Inc. to McKesson Corporation; ratifying the appointment of Deloitte & Touche LLP as independent auditors for the fiscal year ending March 31, 2002; and acting on three advisory proposals submitted by stockholders.

6. Derdiger and his counsel are no strangers to litigation in this Court involving McKesson. *See Derdiger v. Tallman*, Del. Ch., C.A. No. 17276, mem. op., Chandler, C. (July 20, 2000).

Chancery Rule 56 is to avoid a useless trial where there is no genuine issue of material fact. A motion for summary judgment will be granted only when no genuine issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law.[7] Here, no fact material to the resolution of this controversy is in dispute. Therefore, it is proper for me to decide this action on the parties' cross motions for summary judgment.

### III. ANALYSIS

There are two issues that the Court must resolve. First, I must address the parties' disagreement regarding McKesson's compliance with the requirement under § 213(a) that a record date not be set more than sixty days before an associated shareholder meeting. Second, I must address the issue of the consequences of a finding of non-compliance with § 213(a).

#### A. Compliance with § 213(a)

■ McKesson argues that the May 25, 2001 record date for its July 25, 2001 Annual Meeting complied with the requirement of § 213(a) that a record date be no more that sixty days earlier than its corresponding shareholder meeting date. As recited above, § 213(a) permits a board to set a "record date" for stock ownership entitling shareholders to vote at a particular shareholder meeting which "shall not be more than 60 ... days before the date of such meeting."

McKesson contends that it complied with § 213(a) as there are precisely sixty days between May 25 and July 25. The Company cites *Aprahamian v. HBO & Co.*[8] in support of its contention that its choice of dates was consistent with the

sixty-day maximum permitted under § 213(a). In *Aprahamian,* the shareholder meeting at issue was scheduled for May 15, 1987 and the record date, as reported in the Opinion of the Court, was March 15, 1987.[9] Consistent with the McKesson record and meeting dates, there were exactly sixty days *between* the record and meeting dates in *Aprahamian.*

Derdiger's counsel, however, points out that the clear language of § 213(a) states that a record date "shall not be more than 60 ... days *before*" the meeting date, not that there "shall not be more than 60 ... days *between*" the record date and the meeting date. The defendant correctly sets forth the only way to determine whether the statutory imperative of § 213(a) has been met. The statute looks at the number of days *before* the meeting date to determine a valid period of time within which a record date may be set. In this case, the meeting date was July 25, 2001. One day before July 25 is July 24. Two days before July 25 is July 23. Three days before July 25 is July 22. Continuing counting the number of days *before* the meeting date in this manner ends with May 26, 2001 as the sixtieth day *before* July 25, 2001. The statute commands that a record date *"shall not* be more than 60" days before the meeting date. McKesson's May 25, 2001 record date was sixty-one days before the Annual Meeting.

Derdiger also attacks McKesson's reliance on *Aprahamian* as support for the Company's method of calculating when a valid record date may be set under § 213(a). The defendant asserts that McKesson's reading of *Aprahamian* is flawed due to a "typographical error" in the published version of the *Aprahamian*

---

7. *Scureman v. Judge,* Del.Ch., 626 A.2d 5 (1992).

8. Del.Ch., 531 A.2d 1204 (1987).

9. *Id.* at 1205.

Court's decision. Derdiger's counsel found record evidence in the *Aprahamian* case indicating that the record date in HBO's notice of its annual shareholder meeting was actually *March 16, 1987* (not March 15 as the Court's published opinion erroneously recites), *i.e.*, exactly sixty days before HBO's May 15, 1987 annual meeting.[10] As a result, Derdiger argues that *Aprahamian* actually contradicts McKesson's position and supports his position that the May 25, 2001 record date did not correspond to the directive of § 213(a). Alternatively, Derdiger contends that, even if the Court does not accept his argument regarding a typographical error in *Aprahamian*, that case cannot serve as binding precedent on an issue in which it is in apparent conflict with a statutory command.

The selection of a record date for ownership of shares eligible to be voted at the annual shareholder meeting of a Delaware corporation must comply with the requirements of § 213(a). The statute plainly prescribes that, in connection with scheduling any shareholder meeting, "the board of directors may fix a record date ... which record date shall not be more than 60 days nor less than 10 days before the date of such meeting."[11]

Notwithstanding this clear language, McKesson insists that *Aprahamian* authorizes a new and expansive way of calculating the statutory sixty-day maximum allowed by the statute. In *Aprahamian*, on the eve of HBO's scheduled shareholder meeting, the management of HBO decided to postpone the meeting upon receiving information from their proxy solicitor that a group of insurgent shareholders might defeat the management's proposals.[12] The plaintiff challenged that delay and this Court held that the postponement served no significant stockholder interest and directed that the annual meeting be convened as scheduled on May 15, 1987. The Court also directed the Company to immediately adjourn the May 15 meeting and shortly thereafter reconvene the meeting after giving notice to all the shareholders of the Court's decision. The explicit purpose of the Court's directives was to preserve HBO's established March 16, 1987 record date so that the identity of the shareholders originally entitled to vote, including those whose proxies had been garnered by the insurgents, would not change.[13] The directives were necessary to preserve that record date because if HBO's "annual meeting does not convene by May 15, 1987, the proxies submitted by the stockholders may expire because of ... § 213 which provide[s] that a record date shall not be fixed for a date more than 60 days before the date of the annual meeting."[14] Although McKesson is correct that the *Aprahamian* Court apparently calculated the permissible sixty-day window[15] of § 213(a) in the manner the

---

10. *See, e.g.,* Def.'s Opening Br. at 6 ("The record date here fixed by the board for this annual meeting was *March 16....* If that meeting is not convened ... then under Section 213 arguably the record date of *March 16* will no longer be any good.") (emphasis added) (quoting *Aprahamian v. HBO & Co.*, Del. Ch., C.A. No. 8989, Hartnett, V.C. (May 11, 1987) (Tr. of Inj. Hr'g at 41)).

11. *See* 8 *Del. C.* § 213(a), n. 1 *supra.*

12. *Aprahamian*, 531 A.2d at 1205.

13. *Id.* at 1209.

14. *Id.* at 1206.

15. Throughout this Opinion, I use "sixty-day window" and "sixty-day (time) period" as a shorthand reference for the maximum period of time that a record date may be set before a stockholder meeting pursuant to § 213(a). That period of time includes any day from the tenth day before the stockholder meeting to the sixtieth day before the stockholder meeting. I realize that the actual number of days

Company advocates, McKesson's erroneous belief resulted from that decision mistakenly referring to the record date as *March 15, 1987* (*i.e., sixty-one days* before May 15, 1987).

Unlike McKesson, however, I am convinced that the *Aprahamian* Court calculated the sixty-day window in the same way as I explained above. That Court was neither employing a new method of counting the permissible sixty-day time period nor accepting sixty-one days as "close enough." McKesson's ill-fated misconception regarding the earliest date before a shareholder meeting at which a record date may be set results, as explained above, from a typographical error in the *Aprahamian* Court's reported decision that mistakenly refers to HBO's record date as *March 15* instead of *March 16*. Unfortunately, this mistake leads McKesson to interpret the Court's decision in a manner the Court clearly did not intend. The actual Order to adjourn and reconvene, as well as the notice of annual meeting of HBO stockholders, substantiates the *Aprahamian* Court's intention to calculate § 213(a)'s sixty-day window as described herein. The *Aprahamian* Court's stated objective "to protect the record date" makes it clear that it intended to observe

the sixty-day mandate of § 213(a). Indeed, the Court directed the annual shareholder meeting to be convened on May 15, and then instructed that it should "be immediately adjourned without any further action being taken until the meeting reconvenes."[16] Thus, the Order's only purpose for directing that the meeting be convened on May 15, albeit only long enough to adjourn, was to remain within the sixty-day statutory window, thereby preserving the *March 16* record date. Although the existence of a typographical error, unfortunately, distracts from the holding in *Aprahamian,* it does not change the true import of that decision.[17] Nothing in *Aprahamian* can be read, in my view, to support McKesson's position that either sixty days *between* the meeting and record date is statutorily acceptable or that sixty-one days is "close enough" to comply with § 213(a).

McKesson also relies upon *Frank v. Sunstates Corp.*[18] to demonstrate that its method of counting sixty days was reasonable and, therefore, in compliance with the requirements of § 213(a). There, the plaintiff made an application to this Court for an order pursuant to 8 *Del. C.* § 211 to compel a meeting of the shareholders of the defendant corporation. Exercising his

within this "period" (days ten through sixty, inclusive, before the meeting date) is precisely fifty-one days. Because the specific issue to be determined in this case, however, is whether McKesson's record date was within the *maximum* number of days before a stockholder meeting permitted by § 213(a) (sixty), I employ the above shorthand references for the sake of clarity.

**16.** 531 A.2d at 1209.

**17.** Indeed, the *Aprahamian* decision is not about § 213(a) or strict compliance with its timing requirements. Rather, it is one of many cases that illustrates this Court's concern over the integrity of the stockholder franchise and corporate democracy. In *Apraha-*

*mian,* and in like cases, this Court has struck down board action that sets or moves an annual meeting date upon a finding that such action was intended to thwart a shareholder group from effectively mounting an election campaign, *see Aprahamian, supra; Schnell v. Chris Craft Indus.,* Del.Supr., 285 A.2d 437 (1971); *Lerman v. Diagnostic Data, Inc.,* Del. Ch. 421 A.2d 906 (1980), or that set or moved an annual meeting for self-interested reasons of management or the board. *See State of Wisconsin Inv. Bd. v. Peerless Sys. Corp.,* Del. Ch., C.A. No. 17637, mem. op., Chandler, C. (Dec. 4, 2000).

**18.** Del.Ch., C.A. No. 15523, let. op., Steele, V.C. (June 9, 1998).

discretion, then-Vice Chancellor Steele granted the plaintiff's motion for summary judgment, ordering that an annual meeting be held and allowing the defendant corporation sixty days in which to hold its annual shareholder meeting.[19] Since the court-defined window in *Sunstates Corp.* actually embraced sixty-one days,[20] McKesson likewise contends that its scheduling of the Annual Meeting meets the terms of § 213(a).

Again, I disagree. The Court's decision in *Sunstates Corp.* is distinguishable because that case involved an action under § 211 to compel a shareholder meeting. As the Court noted, § 211 "does not suggest or mandate that the Court order the meeting to be held at any particular time; that decision is left to the individual chancellor's *discretion.*"[21] In contrast to applying "the individual chancellor's discretion" under § 211 when the Court compels an annual meeting to be held and sets a date for that meeting,[22] this case requires the Court to enforce a board's obligation to follow the explicit command of a mandatory statutory provision. With § 213(a), the Legislature clearly defined the maximum number of days before a shareholder meeting that a board could set a record date. No discretion was left to the courts to enlarge that statutory time period. The Court in *Sunstates Corp.* did not hold otherwise by setting the time at which an

annual meeting was to be held pursuant to its discretionary power under § 211.

The Legislature includes immutable time limits in statutes to serve particular purposes and such time limits are usually strictly enforced. An example of this can be seen in this Court's recent *Nelson v. Frank E. Best Inc.*[23] decision concerning the "Sunday rule." In that case, the Court held that even when the last day of the limitations period for making an appraisal demand pursuant to 8 *Del. C.* § 262 falls on a Sunday, the statute calls for strict compliance. Recognizing the General Assembly's appreciation of the issue whether or not to exclude weekend days from limitation periods, the Court noted that the clear language of the statute is the most important factor upon which its interpretation hinges.[24]

No reason appears for treating the timing requirements of § 213 less strictly than the timing requirements of § 262. The Legislature's command in each instance is clear and unequivocal. Section 213(a) prescribes a maximum period of exactly sixty days that may separate the record date from a stockholder meeting date. Had the Legislature intended a more flexible interpretation of § 213(a), it would have so provided with enabling language. The Court, therefore, is obliged to respect the statute's literal terms.

19. *Id.* at 1, 3.

20. *Id.*, Ex. A (ORDER) (the Court's Order was dated June 9, 1998, while the date of the shareholder meeting was set for August 9, 1998, *sixty-one* days later).

21. *Id.* at 2. (emphasis added). The discretionary nature of § 211 with regard to whether, and when, to cause a corporation to hold an annual meeting is clear from its language which states that "[i]f there be a failure to hold the annual meeting for [the period of time described in the statute] the Court of Chancery may summarily order a meeting to

be held upon the application of any stockholder or director." *Id.*

22. *Id.*

23. Del.Ch., 768 A.2d 473 (2001).

24. *Id.* at 475 (noting that in contrast to a provision excepting Sundays from the period of time permitted for sending a demand for appraisal under § 262, there are many other instances where "the General Assembly has explicitly excluded final Sundays from the calculation of statutory deadlines").

Sixty-one days separated the May 25, 2001 record date from McKesson's July 25, 2001 Annual Meeting. I conclude, therefore, that under § 213(a) May 25, 2001 was not a valid record date for McKesson's Annual Meeting.

### B. Consequences of Non-Compliance

McKesson contends that in the event I find the May 25 record date failed to comply with § 213(a), equitable considerations should lead me nonetheless to declare that the actions taken at the July 25 Annual Meeting are valid. To this end, McKesson offers two related arguments.

■ First, according to McKesson, an order invalidating the actions taken at the Annual Meeting and requiring another meeting will impose a substantial and unnecessary burden on the Company. Because the group of shareholders on the May 25 record date was the same on May 28 (as a result of the legal holiday), McKesson posits that the results of the votes taken on July 25 would have been the same anyway. To convene another meeting, it contends, would thus be a costly, and useless, exercise.[25]

Second, McKesson insists that its conduct in these circumstances is not inconsistent with the policy reasons underlying the statute. The statute's purpose is to "permit and facilitate reasonable methods of notification" to stockholder's eligible to vote in an upcoming shareholder meeting.[26] By establishing that a record date may not be set less than ten days before a shareholder meeting, the Legislature prevents a board from suddenly calling a shareholder meeting with a time horizon that would not permit proper notification of the company's shareholders. On the other hand, the ten-day minimum also "recogniz[es] the 'practical necessity of dispensing with notice to persons who attempt to become registered shareholders shortly before a meeting.'"[27] The sixty-day maximum time period helps to assure that the list of stockholders eligible to vote at a shareholder meeting is not "stale" and represents those who still have a stake in the company. Therefore, by establishing a time period from ten to sixty days prior to

**25.** McKesson also seems to suggest that this is not a stew of its own making in which it finds itself. It accuses Derdiger's counsel of delaying notification of the problem until eleven days before the date of the Annual Meeting. If McKesson had had more notice, it could have avoided this dispute by sending a notice to stockholders scheduling the meeting for July 24. The July 24 meeting, which would have been held solely to preserve the May 25 record date, would have been immediately adjourned and reconvened on July 25. *See* 8 *Del. C.* § 222(c) (unless company bylaws provide otherwise, notice of adjourned meetings may be announced at the meeting). By waiting until July 17 to make his position known, Derdiger made it too late to send out a notice for a July 24 meeting. *See* 8 *Del. C.* § 222(b) (written notice of any meeting shall be not less than 10 ... days before the date of the meeting to each stockholder entitled to vote at such meeting).

Derdiger does not directly address this point, perhaps because McKesson did not formally advance it as an argument. Nevertheless, I need not address it, because it is based on speculation about what McKesson should or might have done in circumstances different from those that the parties have stipulated to in this proceeding, because the parties have not properly advanced it for decision by this Court, and because consideration of that argument would involve a balancing of equities that is not necessary to my final conclusion as to the consequences of McKesson's improperly set record date.

**26.** *Bryan v. Western Pac. R.R. Corp.,* Del.Ch., 35 A.2d 909, 914 (1944); *Pabst Brewing Co. v. Jacobs,* 549 F.Supp. 1068, 1072 (D.Del.1982) (same).

**27.** *Pabst Brewing,* 549 F.Supp. at 1072 (quoting *Bryan v. Western Pac. R.R. Corp.,* Del.Ch., 35 A.2d 909, 914 (1944)).

a scheduled shareholder meeting during which § 213(a) permits a board to set a corresponding record date, "the Legislature has balanced the interest of the corporation and its shareholders—that is, to allow the corporation sufficient time to determine the shareholders in order to give effective notice of corporate action and to assure that the shareholders who vote have an interest in the corporation."[28]

McKesson argues that since its May 25, 2001 record date was followed by non-trading holidays (again, the New York Stock Exchange and the Pacific Stock Exchange were closed from May 26 to May 28 for the Memorial Day holiday weekend), the composition of the Company's shareholder list did not change before May 26, the last day within the sixty-day time span. The shareholder list existing on May 25, therefore, did not become "stale" and McKesson's shareholders did not suffer harm as a result. Moreover, McKesson asserts that the "overwhelming" majorities that adopted the uncontroversial actions in question during the July 25 Annual Meeting still exist and would presumably cast the same votes. McKesson thus urges a "substantial compliance" or "no harm, no foul" approach to statutory interpretation when a corporate act does no violence to the fundamental statutory purpose.[29] The most "equitable" outcome, McKesson concludes, is for the Court to recognize the underlying validity of the actions taken at the July 25 meeting, even if I find that the record date for the Annual Meeting was not in strict compliance with § 213(a)'s sixty-day maximum.

It is tempting to accept McKesson's invitation to apply a "no harm, no foul" rule in the unusual circumstances of this case. That is particularly true when McKesson's Board acted in apparent good faith and in light of assertions by the Company of the uncontroversial nature of the issues voted on at the Annual Meeting, the overwhelming approval of management's proposals, and the likelihood of a similar result if those actions were declared void and another vote was required. Relying on equitable principles so as to modify an explicit statutory requirement, however, is a dangerous path for this Court to tread because of its "slippery slope" characteristics. It is true that our courts have, on occasion, invoked principles of equity and fairness to strike down corporate actions even when those actions technically satisfied every legal requirement.[30] But McKesson has cited no authority for the reverse of that proposition—that equity properly may be invoked to rescue a corporate act or decision that violates a statutory command. In fact, this Court has been cautioned about the over use of its equitable powers.[31]

---

28. *Id.*

29. *Cf. Weinstein v. Dolco Packaging Corp.,* Del.Ch., C.A. No. 15000, mem. op., Jacobs, V.C. (Mar. 11, 1997) (refusing to construe § 262's requirement that the record owner must make the demand for appraisal as prohibiting an amendment to a petition from relating back to the original filing date under Chancery Rule 15(c); such a holding would "further no statutory policy or purpose").

30. *See Schnell v. Chris–Craft Industries Inc.,* Del.Supr., 285 A.2d 437, 439 (1971).

31. *See, e.g., Alabama By–Products Corp. v. Neal,* Del.Supr., 588 A.2d 255, 258 (1991) (explaining that "the invocation of equitable principles to override established precepts of Delaware corporate law must be exercised with caution and restraint," and refusing to expand the limited scope of Delaware's appraisal statute so as to include unfair dealing into the statutory appraisal assessment. The Court was cognizant of the *Schnell* doctrine but clarified that "its application ... should be reserved for those instances that threaten the fabric of the law, or which by an improper manipulation of the law, would deprive a person of a clear right."); *see also Wyser–*

The drafters of § 213 sought to institute an unambiguous guideline for the scheduling of shareholder meetings. Thus, the Legislature adopted a bright-line rule, requiring that a board, in advance of a shareholder meeting, fix a record date which "shall not be more than 60 nor less than 10 days before the date of such meeting."[32] The language is clear and admits of no discretion to depart from its evident command.

Despite the unusual circumstances militating in favor of validating actions taken at the July 25 meeting, it is obvious that McKesson did not follow § 213(a)'s mandate. The statute prescribes a clear rule requiring strict adherence. If the Court were to accommodate McKesson's request to rewrite the statute "in this particular circumstance," it would expose the Court to accusations that it was engaged in judicial legislation. It would also open the door to similar claims, in which companies could attempt to rely on exceptional or "equitable" circumstances in order to cure an action that violates a clear statutory command. Injecting such legal uncertainty into an otherwise unambiguous statutory regime would neither advance the Legislature's intent nor the stability of the Delaware General Corporation Law.

As explained above, if my only avenue for validating the actions taken at the Annual Meeting were that the equities balanced in favor of McKesson, I would have to declare those actions void. Ruling otherwise would encourage many who may have acted in good faith but failed to comply with mandatory provisions of the DGCL, whether through lack of diligence, slipshod practice or otherwise, to claim that they came "close enough" to complying with a particular statute. Such a result would undermine the clear intent of our Legislature, the efficient functioning of our judicial system and the requirement that counsel be held to the highest standards of professional attentiveness as expected by their clients. I cannot, therefore, hold that the actions taken at the Annual Meeting are valid based on the Company's "equitable" arguments.

■ There is one aspect of this case, however, that does permit me to hold that the actions taken at the Annual Meeting are valid. This is the fact that McKesson could, conceivably, have relied on a decision of this Court for the Company's stated belief that, by selecting a record date that had sixty days *between* it and the meeting date, it had complied with the requirements of § 213(a). Although the extraordinary diligence of defendant's counsel has demonstrated that a typographical error could have been responsible for McKesson's erroneous belief, it is not reasonable to require that counsel seek out the trial transcript or other record material to determine whether the Court really meant what was contained in its

*Pratte v. Smith,* Del.Ch., C.A. No. 15545, let. op., Steele, V.C. (Mar. 18, 1997) (refusing to invoke equitable principles to override corporate action setting record date twelve days before the meeting date, which was clearly within the permissible statutory time frame).

**32.** The statute does contain a default provision, see 8 *Del. C.* § 213(a), which applies in those instances in which "no record date has been fixed." If the board has fixed no record date, the default record date is at the close of business on the day next preceding the day on which notice of the meeting was given. In this case, since McKesson mailed notices of the meeting on June 13, Derdiger has argued (in the alternative) that if McKesson's flawed May 25 record date is treated as "no record date having been fixed," then under § 213(a)'s default provision, the record date was actually June 12 (*i.e.*, the day next preceding the day on which notice was given). In light of the conclusion I reach in this case, however, I do not need to reach the defendant's alternative argument on this issue.

**396**

published opinion. This is even the case when, as the defendant suggests, there was an obvious mistake in a judicial opinion. The Legislature passes laws and, when necessary, courts interpret and give form and definition to those laws. What may be clear from a statute to one observer may not be to another and the courts are here to provide further clarification. But to require counsel to delve into the record when they are confused by or disagree with a court's ruling would be incredibly inefficient and do damage to the precedential value of our decisions.

I acknowledge that the record date, as reported in *Aprahamian*, was sixty-one days before the HBO meeting date and such record date clearly did not fall within the sixty-day maximum period permitted by § 213(a). If the defendant had been able to cite even one case pertaining to this issue directly contradicting *Aprahamian* that would have placed the plaintiff on notice (either constructively or actually) of the error in that case, then perhaps I would reach the contrary conclusion. I also acknowledge the typographical error in this Court's *Aprahamian* decision, but I note that the factual reality of the relevant dates in that case confirms the fundamental correctness of that decision. In this Opinion, I clarify that the correct method for counting the maximum allowed sixty-day period for setting a record date for a shareholder meeting pursuant to § 213(a) is to be conducted as described above. No company should ever be led astray in the future based on any misconception caused by this Court's *Aprahamian* Opinion. Due to the circumstances presented here (which by definition cannot occur again), and in light of the fact that there were no allegations as to any impropriety in connection with the Annual Meeting other than an improper record date, I hold that the actions taken at McKesson's July 25, 2001 Annual Meeting are valid.

## IV. CONCLUSION

For the foregoing reasons, Derdiger's motion to dismiss is denied. Derdiger's motion for summary judgment on his cross-claim seeking a declaratory judgment as to the invalidity of McKesson's record date is granted, but is denied as to the validity of all actions taken during the shareholder meeting. McKesson's motion for summary judgment as to the validity of its record date is denied, but is granted as to the validity of all actions taken during the shareholder meeting. The parties shall confer and provide the Court with a conforming order.