# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TS FALCON I, LLC and CHARLES KERSHAW, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 2023-1247-LWW |
| GOLDEN MOUNTAIN FINANCIAL HOLDINGS CORP., GOLDEN MOUNTAIN FINANCIAL CORP., SHIVAN GOVINDAN, WILLIAM D. AARON, JR., LEANDER J. FOLEY, III, and LAWRENCE BLAKE JONES, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Date Submitted:  May 20, 2024
Date Decided:  August 27, 2024

Michael A. Pittenger, Jacqueline A. Roger, Adriane M. Kappauf & Rebecca Bolinger, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Andrew J. Levander & Mauricio A. España, DECHERT LLP, New York, New York; Christopher J. Merken & Julia M. Curley, DECHERT LLP, Philadelphia, Pennsylvania; *Counsel for Plaintiffs TS Falcon I, LLC and Charles Kershaw*

Travis S. Hunter, Matthew W. Murphy, John M. O'Toole & Mari Boyle, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; *Counsel for Defendants Golden Mountain Financial Holdings Corp., Golden Mountain Financial Corp., Shivan Govindan, William D. Aaron, Jr., Leander J. Foley, III, and Lawrence Blake Jones and Petitioner Shivan Govindan*

**WILL, Vice Chancellor**

In this action under 8 *Del. C.* § 225, the plaintiffs challenge an annual meeting where stockholders voted on director nominees for two private company boards. The plaintiffs ask me to invalidate the election results and restore the prior directors. Although the parties sling a mess of arguments for or against this relief, a trial on a paper record revealed a tidy outcome.

The defendants set a retroactive record date for the annual meeting—an undisputed violation of 8 *Del. C.* § 213(a). They did so intentionally, choosing a record date just before the plaintiffs gave notice of their intent to exercise an option to acquire additional stock.

To fix this defect, one of the defendants filed a petition for judicial validation under 8 *Del. C.* § 205. I decline to grant it. Equity cannot bless this deliberate violation of an explicit statutory prohibition.

The plaintiffs are entitled to judgment in their favor. The boards revert to their pre-election compositions until successor directors are validly elected. The parties' remaining complaints can be taken up outside of this narrow statutory proceeding.

## I.    FACTUAL BACKGROUND

Unless otherwise noted, the following facts were stipulated to by the parties or proven by a preponderance of the evidence at trial.[1]

---

[1] Joint Pre-trial Stipulation and Order (Dkt. 129) ("PTO"). This decision recites only the facts necessary to resolve the plaintiffs' claims and the petition for validation. To the extent that conflicting evidence was presented, I have weighed it and made findings of fact

1

## A. FNBC's Restructuring

Golden Mountain Financial Holdings Corp. ("HoldCo") is a Delaware corporation with its principal place of business in Colorado.[2]  HoldCo is a "[l]oss [c]orporation," meaning it has substantial tax attributes that can carry over as net operating losses (NOLs) after an ownership change.[3]  Its predecessor was First NBC Bank Holding Co. ("FNBC"), the holding company of a New Orleans-based bank.[4]

In 2021, FNBC emerged from years of bankruptcy proceedings.[5]  It was restructured in a way that allowed it to retain certain tax assets, including the NOLs.[6]  These tax assets could potentially offset approximately $1 billion of federal corporate income tax.[7]

Under Section 382 of the Internal Revenue Code (IRC), the tax assets could be limited or impaired if HoldCo underwent an ownership change (as defined in the statute).[8]  To prevent that outcome and monetize the assets, FNBC would need to

---

accordingly.  Facts drawn from exhibits jointly submitted by the parties at trial are referred to according to the numbers provided on the parties' joint exhibit list and cited as "JX__" unless otherwise defined.  *See* Joint Ex. List (Dkt. 121).  Deposition transcripts are cited as [Name] Dep. __.

[2] PTO ¶ 3.

[3] JX 286 at 17; JX 190 Ex. B ¶ 9.

[4] PTO ¶ 12.

[5] *Id.*

[6] PTO ¶ 14; *see* JX 286 at 17; JX 190 Ex. B ¶ 9.

[7] PTO ¶ 15; Govindan Dep. 30-31; Aaron Dep. 21; Jones Dep. 15-16.

[8] PTO ¶ 16; *see* JX 286 at 17; *see also* 26 U.S.C. § 382.

participate in a strategic transaction with an operating business that could use the assets to offset taxable income.[9]

## B. Falcon's HoldCo Investment

FNBC sought post-bankruptcy capital through a loan and potential investors.[10] In January 2021, plaintiff TS Falcon, I, LLC ("Falcon") entered into a Reorganization and Stockholders Agreement (the "Stockholders Agreement") and a Revolving Loan and Security Agreement with FNBC as the borrower.[11] Falcon is a Delaware limited liability company with its principal place of business in New York.[12] The Stockholders Agreement reorganized FNBC into three entities: HoldCo and its wholly owned subsidiaries Golden Mountain Financial Corp. ("OpCo."), and GMF Midco, LLC.[13]

Through the Stockholders Agreement and a related subscription agreement, Falcon acquired a 35% ownership interest in HoldCo, making it HoldCo's largest stockholder. It also gained an option to increase its stake up to 44.9% of HoldCo's outstanding stock (the "HoldCo Option").[14] The Stockholders Agreement gave

---

[9] PTO ¶ 16.

[10] *Id.* ¶ 17.

[11] *Id.*; *see also* JX 2; JX 3.

[12] PTO ¶ 1. The plaintiffs in this action are Falcon and its principal Charles Kershaw. For simplicity's sake, I refer to them collectively as "Falcon."

[13] *Id.* ¶ 17; *see* JX 2.

[14] PTO ¶¶ 1, 18.

3

Falcon the right to appoint three of the seven members of HoldCo's Board of Directors and two of the three members of OpCo's Board of Directors until April 30, 2023.[15] After that two-year period, vacancies on the HoldCo Board would be filled consistent with HoldCo's bylaws.[16]

Falcon appointed plaintiffs Charles Kershaw, Chase Begor, and Daniel Strauss to the HoldCo Board, and Kershaw and Begor to the OpCo Board.[17] The other HoldCo directors were defendants Shivan Govindan, William D. Aaron, Jr., Leander J. Foley, III, and Lawrence Blake Jones (the "Director Defendants")—all legacy FNBC directors.[18] Govindan was also the third member of OpCo's Board.[19]

## C.    The Potential Halsa Merger

After emerging from bankruptcy, HoldCo explored strategic transactions that would monetize and protect the tax assets.[20] Groundworks Industries Inc. and Halsa Holdings, LLC were identified as potential transaction partners.[21] Halsa is a

---

[15] JX 2 at 20.

[16] *Id.*; *see* JX 6.

[17] PTO ¶¶ 2, 9, 10; Kopewicz Dep. 37.

[18] PTO ¶¶ 5-8.

[19] *Id.* ¶ 5.

[20] *Id.* ¶ 28.

[21] *Id.* ¶ 29.

California based cannabis company.[22] The HoldCo Board and Falcon held opposing views on the potential transaction.[23]

In February 2023, HoldCo and Falcon reached a potential governance agreement in connection with the Halsa transaction.[24] On February 18, the HoldCo Board acted by written consent (the "February Written Consent") to approve negotiations with Halsa and Groundworks as well as with Falcon.[25] Govindan was authorized to negotiate letters of intent for the transactions, consistent with a "Summary of Terms" attached to the February Written Consent.[26]

The "Summary of Terms" reflected a conceptual framework for the transactions and governance changes for HoldCo and its subsidiaries.[27] If approved by a majority of stockholders, the HoldCo Board would expand to eight members: four legacy FNBC directors and four Falcon-selected directors.[28] HoldCo would also be obligated to hold an annual meeting for stockholders to vote on the Halsa merger and elect HoldCo and OpCo Board members.[29]

---

[22] *Id.* ¶ 30.

[23] JX 35; JX 37.

[24] PTO ¶¶ 32-33.

[25] *Id.* ¶ 34; JX 58.

[26] JX 58 at 5-8; *see* PTO ¶¶ 33-35.

[27] JX 58 at 5-8.

[28] PTO ¶ 35; JX 58 at 6; *see also* JX 57.

[29] PTO ¶ 35; JX 58 at 6-7.

On April 7, 2023, the HoldCo Board acted by written consent (the "April Written Consent") authorizing HoldCo to "enter into term sheets to pursue and negotiate a series of transactions" with Halsa, Groundworks, and Falcon.[30] The HoldCo Board gained an eighth seat, and seven director candidates were nominated for election.[31] Four of the HoldCo Board nominees were selected by Falcon: Kershaw, Begor, Strauss, and Taylor Kushner.[32] The other three were Director Defendants Aaron, Foley, and Jones.[33] The HoldCo Board also resolved to nominate four OpCo Board candidates: Matt Elsom, Aaron, Kushner, and Kershaw.[34]

The April Written Consent confirmed that "any changes to the decisions and actions set forth in these resolutions, including any material changes to the [t]erm [s]heets, require the unanimous written consent of the Board."[35] The HoldCo Board agreed to effectuate the actions contemplated by the April Written Consent through stockholder written consents.[36]

---

[30] PTO ¶ 36; JX 69.

[31] PTO ¶ 36; JX 69 at 1-2.

[32] PTO ¶ 37; JX 69 at 1.

[33] PTO ¶ 37; JX 69 at 1.

[34] PTO ¶ 38; JX 69 at 2.

[35] PTO ¶ 36; JX 69 at 3.

[36] JX 69.

## D. The May 31 Board Meeting

By early May, HoldCo had not collected the necessary stockholder written consents to elect the HoldCo and OpCo Board nominees.[37] On May 12, HoldCo management told Falcon that "due to some non[-]responders," HoldCo had "decided to press forward with a [stockholders] meeting" instead.[38] Later that day, HoldCo said that its counsel, Gil B. Rosenthal, had to "work out" the meeting date "with the transfer agent."[39]

On May 31, the Board met to "discuss[] the date of the annual shareholder meeting and record date."[40] It resolved to set an annual meeting for June 30, 2023 with a record date of June 2, 2023.[41]

During the May 31 meeting, Govindan moved to executive session and excluded Falcon's designated HoldCo Board observers.[42] Govindan "noted the need to change the size of the board of directors" and proposed nominees for election at the annual meeting.[43] Over the objection of Kershaw, Begor, and Strauss, the Director Defendants approved a resolution "confirm[ing] the size of the [HoldCo]

---

[37] *See* JX 70; JX 80 at 1.

[38] JX 80 at 1.

[39] *Id.*

[40] JX 86 at 1.

[41] PTO ¶ 53.

[42] *Id.* ¶ 39; Govindan Dep. 213-14; *see* JX 86 at 3.

[43] JX 86 at 3; *see* PTO ¶ 40.

Board as seven (7) directors."[44]  The Director Defendants voted in favor of a resolution nominating and recommending for election to the HoldCo Board Aaron, Foley, Jones, Strauss, and non-parties Fenn French and Jeffrey Brotman.[45]  Strauss was the only Falcon nominee of the seven.  The Director Defendants also voted in favor of a resolution nominating and recommending for election an OpCo Board slate featuring Govindan, Elsom, and a nominee to be provided by Falcon.[46]

### E.     The Notice of Exercise and October 29 Board Meeting

HoldCo was unable to achieve a merger with Halsa on the terms contemplated by the April Written Consent and accompanying term sheets.[47]  As a result, HoldCo began negotiating different terms with Halsa.[48]

On October 26, Falcon notified HoldCo of its intent to exercise its HoldCo Option and increase its stake in HoldCo from 35% to 44.9%.[49]  HoldCo objected to certain terms in Falcon's notice of exercise.[50]  Falcon responded by commencing arbitration proceedings in New York.[51]  The arbitration is ongoing.

---

[44] JX 86 at 3; *see* PTO 41.

[45] PTO ¶ 41.

[46] JX 86 at 4; *see* PTO ¶ 42.

[47] PTO ¶ 43.

[48] *See* JX 226 at 10-56.

[49] JX 149; JX 2 at 7.

[50] JX 172.

[51] PTO ¶ 60.

On October 29, Govindan called an executive session of the HoldCo Board, excluding Falcon's observers.[52] During the meeting, the Director Defendants voted in favor of a resolution to reschedule the annual meeting for December 1, 2023 with a record date of October 25, 2023—the day immediately before Falcon notified HoldCo of its intent to exercise the HoldCo Option.[53]

## F.    The Annual Meeting Notice

On November 6, the HoldCo Board sent stockholders proxy materials for the December 1 annual meeting, including HoldCo's proxy statement and a proxy voting card.[54] The proxy statement said that "Falcon ha[d] submitted nominees to fill the director vacancies on the HoldCo and [OpCo] [B]oards."[55] It identified Falcon's four nominees: Kershaw, Begor, Kushner, and Strauss.[56] The proxy statement "recommend[ed] against th[e Falcon] slate strongly[.]"[57] The proxy statement also disclosed HoldCo's intent to seek stockholder approval for a cashless merger with Halsa.[58]

---

[52] *Id.* ¶ 58; JX 167.

[53] PTO ¶ 59; JX 167 at 2-9. By this point, the annual meeting date had been pushed back several times. *See* PTO ¶¶ 53-55, 59.

[54] PTO ¶ 63; *see also* JX 404; JX 226.

[55] JX 171 at 19; *see also* PTO ¶ 64.

[56] JX 171 at 19; *see also* PTO ¶ 64.

[57] PTO ¶ 65; *see also* JX 171 at 19.

[58] JX 226 at 10-56.

Falcon did not circulate its own proxy materials or voting card.[59] Falcon's nominees were excluded from HoldCo's proxy voting card.[60]

### G. The Annual Meeting

On December 1, HoldCo gaveled in its annual meeting only to immediately adjourn it due to uncertainties around the effect of a temporary restraining order entered by a New York court on November 29.[61]

Over Falcon's objection, HoldCo resumed the annual meeting on December 6 with a quorum of stockholders present in person or by proxy.[62] Falcon was in attendance.[63]

After the election, the HoldCo Board consists of Govindan, Jones, Aaron, French, Foley, Elsom and Strauss, and the OpCo Board consists of Govindan, Elsom, and Kushner.[64]

---

[59] PTO ¶ 66.

[60] *See id.*

[61] PTO ¶ 74. The temporary restraining order enjoined HoldCo from breaching the Revolving Loan and Security Agreement, effectuating the Halsa merger, or "taking any action to dissipate [Falcon's] collateral in [HoldCo and OpCo]." *Id.* ¶ 71. Falcon obtained this relief while it was (unsuccessfully) pursuing injunctive relief in this court. *See* JX 405.

[62] PTO ¶ 81.

[63] *Id.* ¶ 80.

[64] JX 251; JX 252; *see* PTO ¶ 81.

## H.     This Litigation

On December 13, 2023, Falcon filed a verified complaint in this court against the Director Defendants, HoldCo, and OpCo.[65]  Falcon advanced one cause of action for a declaratory judgment under 8 *Del. C.* § 225.

On January 31, 2024, Falcon filed an Amended Verified Complaint (the "Complaint") advancing two claims against the same defendants.[66]  Count I is a request for a declaratory judgment under 8 *Del. C.* § 225.[67]  Count II is a claim for violation of 8 *Del. C.* § 213(a).[68]  As relief, Falcon asks for declarations that the record date, annual meeting, and election results are invalid and that the pre-election HoldCo and OpCo Boards are restored.  It also seeks the production of a complete stockholder list and an award of attorneys' fees.

On February 8, the defendants answered the Complaint and Govindan filed a petition for validation under 8 *Del. C.* § 205.[69]

A one-day trial on a paper record was held on April 12.[70]  After post-trial briefing, this matter was submitted for decision as of May 20.[71]

---

[65] Dkt. 1; *see also* PTO ¶ 83.

[66] Dkt. 46.

[67] Verified Am. Compl. (Dkt. 46) ¶¶ 59-66.

[68] *Id.* ¶¶ 67-72.

[69] Dkt. 69.

[70] Dkts. 138, 141

[71] Dkts. 146, 147.

## II. LEGAL ANALYSIS

Falcon contends that the Director Defendants violated 8 *Del. C.* § 213(a) by setting a retroactive record date. None of the defendants contest that the statute was violated. Instead, Govindan seeks judicial validation of the election results. As explained below, I decline to grant this relief.

That leaves Falcon's claim under 8 *Del. C.* § 225, which is based on alleged violations of Delaware law, HoldCo's governing documents, and the Director Defendants' fiduciary duties. Because I conclude that the retroactive record date violated Section 213(a) and that the results of the vote are invalid, I need not reach Falcon's remaining Section 225 arguments. The election results are set aside and the pre-annual meeting HoldCo and OpCo Boards are in place pending the election of their successors.

### A. Falcon's Section 213(a) Claim

Falcon claims that the defendants violated 8 *Del. C.* § 213(a). Section 213(a) provides, in relevant part, that "the board of directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the board of directors."[72] On October 29, 2023, the Director

---

[72] 8 *Del. C.* § 213(a).

Defendants set a record date of October 25, 2023 for the December 1 annual meeting. They concede that the retroactive record date violated Section 213(a).[73]

The statute is not optional. It is unambiguous. As Chancellor Chandler observed in *McKesson Corp. v. Derdiger*, it provides "no discretion to depart from its evident command."[74] "The selection of a record date for ownership of shares eligible to be voted at [an] annual shareholder meeting of a Delaware corporation must comply with the requirements of § 213(a)."[75] HoldCo's setting of a record date for the 2023 annual meeting did not.

Judgment on Count I is in favor of Falcon.

### B. Govindan's Section 205 Petition

Govindan asks that I validate the retroactive record date, the annual meeting, and the election results, asserting that Section 205 is "tailor-made" for this situation.[76] Falcon opposes the petition and argues that Govindan's request to validate an admitted statutory violation is "untethered to law, equity, or common sense."[77]

---

[73] *See* Trial Tr. (Dkt. 141) 52; JX 160 at 8; Defs.' Pre-trial Br. (Dkt. 122) 2.

[74] 793 A.2d 385, 395 (Del. Ch. 2002).

[75] *Id.* at 390 (holding that a record date that preceded the annual meeting by 61 days was invalid under Section 213(a)).

[76] Defs.' Post-trial Br. (Dkt. 146) 2.

[77] Pls.' Post-trial Br. (Dkt. 147) 17.

"Under 8 *Del. C.* § 205(a), this court may determine 'the validity of any corporate act or transaction and any stock' and the validity and effectiveness of any defective corporate act."[78]  A "defective corporate act" is:

> any act or transaction purportedly taken by or on behalf of the corporation that is, and at the time such act or transaction was purportedly taken would have been, within the power of a corporation under [8 *Del. C.* §§ 121-27] (without regard to the failure of authorization identified in [8 *Del. C.*] § 204(b)(1)(D) . . .), but is void or voidable due to a failure of authorization.[79]

HoldCo's setting of a retroactive record date suffers from a failure of authorization. The term "failure of authorization" is defined to include "the failure to authorize or effect an act or transaction in compliance with [] the provisions of [the Delaware General Corporation Law] . . . if and to the extent such failure would render such act or transaction void or voidable."[80]

Section 205(d) lists five non-exhaustive factors that the court "may consider" when determining whether to validate a defective corporate act:

> (1) Whether the defective corporate act was originally approved or effectuated with the belief that the approval or effectuation was in compliance with the provisions of this title, the certificate of incorporation or bylaws of the corporation;

---

[78] *In re Lordstown Motors Corp.*, 290 A.3d 1, 10 (Del. Ch. 2023) (quoting 8 *Del. C.* § 205(a)(4)).

[79] 8 *Del. C.* § 204(h)(1).

[80] *Id.* § 204(h)(2).

(2) Whether the corporation and board of directors has treated the defective corporate act as a valid act or transaction and whether any person has acted in reliance on the public record that such defective corporate act was valid;

(3) Whether any person will be or was harmed by the ratification or validation of the defective corporate act, excluding any harm that would have resulted if the defective corporate act had been valid when approved or effectuated;

(4) Whether any person will be harmed by the failure to ratify or validate the defective corporate act; and

(5) Any other factors or considerations the Court deems just and equitable.[81]

"The list is neither exclusive nor mandatory but meant to guide the court's exercise of its discretion."[82] Here, the factors disfavor validation. I decline to exercise my discretion to grant it.

### 1. Belief in Validity

First, I cannot conclude that the Director Defendants set the record date believing that they were following Section 213(a). The October 25 record date was adopted on October 29. The statute explicitly states that a record date "shall not precede" the date of adoption.[83] There is no ambiguity or potential uncertainty that

---

[81] *Id.* § 205(d)(1)-(5).

[82] *Lordstown*, 290 A.3d at 12 (citation omitted).

[83] 8 *Del. C.* § 213(a).

tips in favor of giving HoldCo a pass.[84] "Ruling otherwise would encourage many who may have acted in good faith but failed to comply with mandatory provisions of the DGCL, whether through lack of diligence, slipshod practice or otherwise, to claim that they came 'close enough' to complying with a particular statute."[85]

The Director Defendants not only violated the DGCL, but also did so purposefully.[86] Their goal was to set a record date of one day before Falcon sent notice of its intent to exercise the HoldCo Option.[87]

The timeline of relevant events makes the Director Defendants' intentions obvious. On October 26, Govindan recommended that the HoldCo Board move the annual meeting to December 1 and set a record date of October 26.[88] A few hours later, Falcon informed HoldCo that it intended to exercise the HoldCo Option, which would increase Falcon's equity stake to 44.9%.[89] On the afternoon of October 27,

---

[84] *Cf. Lordstown*, 290 A.3d at 12-13 (validating a defective corporate act where the "company had a good faith belief in the validity of its charter amendment" based on a widely held reading of a statute).

[85] *McKesson*, 793 A.2d at 395.

[86] JX 288 at 9-10; Govindan Dep. 250-51; *see also* Trial Tr. 126 ("Q: How can I say there was a good-faith belief that's directly in contravention of the statutory language? A: . . . [The] concern was that Falcon would try to disrupt the annual meeting by claiming that having sent in the HoldCo [O]ption notice, that it should automatically be entitled to those shares and automatically be entitled to vote those shares[.]").

[87] *See* JX 288 at 9-11; JXs 150-51; JX 148; JX 158; JX 153.

[88] JX 150 at 1.

[89] JX 151.

Govindan asked that HoldCo's proxy solicitor set the record date for October 25.[90] On October 29, after holding an executive session, the HoldCo Board approved the October 25 record date.[91]

The Director Defendants maintain that, despite their intentional selection of a retroactive record date, they acted in good faith and for equitable purposes. They believe that setting the record date to preempt Falcon from attempting to vote the shares subject to the HoldCo Option ensured "stability and clarity in the votes cast at the annual stockholders' meeting" and avoided confusion among stockholders.[92] They also aver that moving up the record date was meaningless since Falcon did not yet own and could not vote the contested shares.[93]

These arguments leave me with questions—not comfort. Why would a retroactive record date be an appropriate way to prevent Falcon from attempting to vote the shares? Why would HoldCo's stockholders have been confused about the effect of Falcon's notice of exercise?[94] And if the Director Defendants legitimately

---

[90] *See* JX 153.

[91] JX 165; *see* JX 165; PTO ¶¶ 58-59.

[92] JX 288 at 9; *see* Govindan Dep. 250-51; Jones Dep. 133, 135-56; Aaron Dep. 182.

[93] *See* Govindan Dep. 250-51; Jones Dep. 133.

[94] In fact, the defendants did not object to Falcon's exercise of the HoldCo Option until November 2. JX 172; PTO ¶ 59.

believed that Falcon's notice of exercise had no bearing on the outcome of the stockholder vote, why would they commit a statutory violation?

Even if there were good intentions in setting the record date, the Director Defendants overshot. They eliminated any opportunity for Falcon to increase its voting power before the annual meeting.

Before trial, the Director Defendants indicated that their belief in the validity of the record date was based on legal advice.[95] After Falcon filed a motion in limine, they committed not to advance an advice of counsel defense.[96] Now, they contend that their request for legal advice evidences good faith.[97] This argument, too, gives me no solace. Surely HoldCo's counsel—who was advising a Delaware corporation

---

[95] Defs.' Pre-trial Br. (Dkt. 122) 14 ("Gil Rosenthal, the Company's counsel from Kutak Rock LLP, suggested this record date and the Company adopted this suggestion." (citing Govindan Dep. 241, 249)); *id.* at 25.

[96] *See* Defs.' Opp'n to Pls.' Mot. in Limine (Dkt. 124) ¶ 13. Falcon filed a motion in limine asking that I exclude evidence of the Director Defendants' reliance on counsel because related information was withheld in discovery. Reliance on counsel was first raised in this case on March 21, when Govindan testified at his deposition that the October 25 record date was selected after he spoke to Rosenthal. Govindan Dep. 241-49. But when Falcon asked for communications supporting that assertion, the defendants refused to produce them because the fact discovery deadline had passed. Since the defendants assure me that they are not using Rosenthal's advice defensively, the motion in limine is denied. To the extent that any such evidence is before me, I find it unpersuasive.

[96] *See* Defs.' Pre-trial Br. 25 n. 8 (arguing that "Govindan's testimony demonstrates 'the fact that [the Board] sought and obtained legal advice' before setting the Record Date" (quoting *In re Comverge, Inc. S'holders Litig.*, 2013 WL 1455827, at *3 (Del. Ch. Apr. 10, 2013))).

[97] *See id.* at 25.

18

on setting a record date for an annual meeting—understood the import of Section 213(a).[98]

### 2. Treatment of the Act as Valid

Second, HoldCo and the Director Defendants treated the act as valid in a few ways. The record date was disclosed to stockholders.[99] The record date was further applied when the annual meeting was convened.[100] The disclosure of the election results also relied, in a sense, on the validity of the record date.[101] But this reliance is of limited weight when compared to the precedent cited by the defendants.

In *Almond for Almond Family 2001 Trust v. Glenhill Advisors LLC*, the court validated reverse stock splits that "were implemented in a defective manner" because counsel had "botched" the documentation of the transactions.[102] The flaw went unnoticed until after the transactions were implemented. The reverse stock splits were disclosed in a press release and to FINRA. The defendants "purported to take official action by signing [b]oard resolutions approving the [r]everse [s]tock

---

[98] *See McKesson*, 793 A.2d at 395 (declining to conclude that certain actions taken in reliance on Section 213 were valid because to excuse compliance with a clear statute would undermine "the requirement that counsel be held to the highest standards of professional attentiveness as expected by their clients").

[99] JX 171.

[100] JX 251.

[101] *See* JX 278.

[102] *Almond for Almond Family 2001 Tr. v. Glenhill Advisors LLC*, 2018 WL 3954733, at *20 (Del. Ch. Aug. 17, 2018), *aff'd*, 224 A.3d 200 (Del. 2019).

[s]plits . . . and by authorizing amendments to the [c]ompany's certificate of incorporation in connection with [those] transactions."[103] "Numerous parties relied on the public record of validity," including those who traded shares over a four-year period.[104]

In *In re Lordstown Motors Corp.*, this court validated potentially defective charter amendments where a questionable reading of the charter had been widely adopted in the market. The company relied on the validity of the amendments in issuing "billions of shares," which stockholders traded over a two-year period.[105] The company disclosed the stock issuances in "various public filings."[106] Third parties relied on the amendments' validity by executing a merger with the company, as did the company's employees and directors when accepting equity grants.[107]

This case is different. In *Almond* and *Lordstown*, the companies, their boards, stockholders, and the public relied on the validity of defective corporate acts for significant periods. Here, HoldCo, some of its directors, and certain stockholders relied on the validity of the record date for a short time in connection with a single

---

[103] *Id.*

[104] *Id.*

[105] *Lordstown*, 290 A.3d at 3.

[106] *Id.* at 13.

[107] *Id.*

20

private company director election.  Just as importantly, the defective acts addressed in *Almond* and *Lordstown* were not flagrant violations of statutory prohibitions.

### 3. Harm From Validation

Third, there is a non-zero risk of harm to Falcon if I grant validation of "the actions taken at the [annual m]eeting," as Govindan requests in his petition.[108]  That relief would effectively bless the Director Defendants' exclusion of Falcon's nominees from the slate of HoldCo and OpCo Board candidates (which Falcon says violated the April Written Consent), among other contested matters.[109]  Without wading into the merits of these issues, I can discern some potential for Falcon to be negatively affected if I were to validate the election results.

There is also a risk of harm to the stockholder franchise more broadly.  This is not a case of mistabulating voting results or interpreting a charter amid uncertainty in the applicable law.[110]  Here, the record date was purposefully fixed in

---

[108] Pls.' Post-trial Br. 27-28; JX 286 at 38.

[109] *See* Pls.' Post-trial Br. 27-28.  Falcon argues that validation would also permit other misconduct by the Director Defendants in connection with the annual meeting, such as misstatements regarding the Halsa merger, entrenchment, and the counting of non-record stockholders' votes. *See id.*  Resolving these issues is unnecessary, given my conclusions that Section 213 was violated and that validation should be denied.

[110] *See Lordstown*, 290 A.3d at 12-13; *In re Mullen Auto. Inc. S'holder Litig.*, C.A. No. 2022-1131-LWW, at 58 (Del. Ch. June 8, 2023) (TRANSCRIPT).

contravention of the DGCL to frustrate a large stockholder. Delaware courts strive to prevent such gamesmanship.[111]

### 4. Harm Absent Validation

Fourth, I can see some limited harm to HoldCo if I decline to validate the record date. HoldCo would incur additional expenses from sending new proxy materials and holding another annual meeting, which could yield the same voting outcome as the December 6 meeting. Denying the petition would also reinstate the pre-election HoldCo and OpCo Boards, which could put in doubt board-level actions taken post-election (though I am aware of none). Further, invalidating the record date would effectively nullify the votes cast by stockholders other than Falcon during the annual meeting.

### 5. Other Factors

Fifth, no other factors—just, equitable, or otherwise—support validation. The only relevant argument made by the Director Defendants is that Falcon itself acted inequitably. For the most part, this argument amounts to obfuscation.[112] Problematic conduct by Falcon is not an invitation to violate the DGCL.

---

[111] *See, e.g.*, *Totta v. CCSB Fin. Corp.*, 2022 WL 16647972, at *2 (Del. Ch. Nov. 3, 2022); *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012); *see also Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651 (Del. Ch. 1988); *Schnell v. Chris-Craft Indus., Inc.*, 285 A.2d 437 (Del. 1971); *Lerman v. Diagnostic Data, Inc*., 421 A.2d 906 (Del. Ch. 1980).

[112] *See* Defs.' Post-trial Br. 8-10.

The defendants' main complaint is that Falcon strategically delayed bringing its Section 213(a) claim. Falcon knew about the retroactive record date but waited until after it lost the director election on December 6 to object.[113] The timing of Falcon's suit, however, has no bearing on whether HoldCo's record date was defective. Regardless, Falcon's delay is not so unreasonable that I would be persuaded to favor validation.[114]

*          *          *

On balance, the Section 205(d) factors counsel against validation. I decline to validate the record date, the meeting, or the actions taken at the meeting. The Director Defendants did not commit a foot fault. They purposely chose a retroactive record date in response to Falcon's notice of exercise.[115] Section 205 is not an equitable eraser for purposeful violations of clear statutes.[116]

---

[113] *Id.* at 8-9. The Director Defendants also argue that Falcon failed to timely challenge a prior September 26 retroactive record date. This is irrelevant. The Section 205 petition only concerns the October 25 record date.

[114] *Cf. Zohar III Ltd. v. Stila Styles, LLC*, 2022 WL 1744003, at *9 (Del. Ch. May 31, 2022) (holding that a five-month delay in bringing a claim was not unreasonable where there were several disputes percolating between the parties when the plaintiff filed its claim), *aff'd*, 285 A.3d 1204 (Del. 2022).

[115] For these reasons, I also decline the defendants' invitation to blue pencil their corporate records and proxy materials to "apply the November 5, 2023 default record date contemplated by Section 213(a) and the bylaws." *See* Defs.' Post-trial Br. 19-20.

[116] *See In re 1847 Goedeker Inc.*, C.A. No. 2022-0219-SG, at 38-39 (Del. Ch. May 27, 2022) (TRANSCRIPT) (remarking that "Section 205 can't be an 'open sesame' to a cave of equity to fix mistakes").

HoldCo's December 6 annual meeting resulted from a retroactive record date in violation of Section 213(a). "[U]nder Delaware law, a corporate action is void where it violates a statute . . . ."[117] Accordingly, Falcon is entitled to a declaration that the record date and annual meeting, including the director elections and votes taken at the meeting, are invalid and void.[118]

## C. Falcon's Section 225 Claim

Falcon seeks a declaration under 8 *Del. C.* § 225(a) that the removal of Kershaw and Begor as HoldCo and OpCo directors and the election of new HoldCo and OpCo directors at the 2023 annual meeting are invalid and void.[119] That is, Falcon requests that the HoldCo and OpCo Board members be deemed those in office before the challenged election. Section 225(a) provides: "[u]pon application of any stockholder or director . . . the Court of Chancery may hear and determine the validity of any election, appointment, removal or resignation of any director or officer of any corporation."[120] Falcon bears the burden of proving its entitlement to relief.[121]

---

[117] *Southpaw Credit Opportunity Master Fund, L.P. v. Roma Rest. Hldgs., Inc.*, 2018 WL 658734, at *5 (Del. Ch. Feb. 1, 2018) (citing *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035 (Del. 2014)).

[118] *See* PTO ¶ 106(b).

[119] Compl. ¶ 66; *see* PTO ¶ 106(i)-(k).

[120] 8 *Del. C.* § 225(a).

[121] *In re IAC/InterActive Corp.*, 948 A.2d 471, 493 (Del. Ch. 2008).

Falcon contends that the pre-election HoldCo and OpCo directors should be reinstated due to the defendants' misconduct, including violations of the DGCL, HoldCo's governing documents, and the Director Defendants' fiduciary duties. The first issue is dispositive.

As explained above, the record date set for the 2023 annual meeting violated Section 213(a) of the DGCL. The meeting and voting results are invalid, including the election of directors to the HoldCo and OpCo Boards.

Both the HoldCo and OpCo Boards therefore revert to their pre-election compositions.[122] Those directors will remain in office until their successors have been properly elected and qualified, in accordance with the DGCL and HoldCo's certificate of incorporation and bylaws.[123] Falcon is entitled to declaratory relief to this effect and has prevailed on Count II of its Complaint.

Falcon also seeks ancillary relief, including an order requiring HoldCo to produce a complete stockholder list with mailing and email addresses.[124] Such relief

---

[122] *See N. Fork Bancorp., Inc. v. Toal*, 825 A.2d 860, 871 (Del. Ch. 2000), *aff'd sub nom. Dime Bancorp, Inc. v. N. Fork Bancorp., Inc.*, 781 A.2d 693 (Del. 2001).

[123] *See id.*; *see also* 8 *Del. C.* § 141(b). Because the HoldCo and OpCo Board compositions are not indefinite, I decline Falcon's request to award it permanent injunctive relief preventing the defendants from "holding out" French as a director of HoldCo and Elsom as a director of OpCo and HoldCo. PTO ¶ 110(m)-(n); *see also infra* notes 125-26.

[124] *See* Pls.' Post-trial Br. 34 (citing 8 *Del. C.* § 219). Falcon also seeks various declarations that are unnecessary to resolve its Section 225 claim. *See* PTO ¶ 110(c)-(h), (l).

is unrelated to the determination of which directors hold corporate office.[125] It falls outside the scope of this statutory claim.[126]

### D. Attorneys' Fees

Finally, Falcon seeks attorneys' fees and expenses under the corporate benefit doctrine. The corporate benefit doctrine may justify fee-shifting if "an action brought pursuant to 8 *Del. C.* § 225 achieves a benefit for the corporation."[127] HoldCo will benefit from a legally compliant election process. At the same time, absent a resolution of the arbitration over the HoldCo Option, the next director election might not yield a different result.

The main beneficiary of this action is Falcon—"hardly a thrilling victory from the point of view of the [other] stockholders who are not [Falcon's] allies."[128] Although invalidating the retroactive record date promotes the stockholder franchise, the benefit to stockholders other than Falcon is comparatively slight. Falcon's request for attorneys' fees and expenses is denied.

---

[125] *See Avgiris Brothers, LLC v. Bouikidis*, 2022 WL 4672075, at *13-14 (Del. Ch. Sept. 30, 2022) (explaining, in the limited liability company context, that the court should not address matters collateral to deciding the identity of the entity's manager).

[126] *See Arbitrium (Cayman Islands) Handels AG v. Johnston*, 1997 WL 589030, at *4 (Del. Ch. Sept. 17, 1997) (observing that Section 225 actions are "in the nature of an *in rem* proceeding" and that the court may only grant relief needed to resolve the dispute over corporate office).

[127] *Keyser v. Curtis*, 2012 WL 3115453, at *19 (Del. Ch. July 31, 2012).

[128] *Id.* (declining to award fees in a Section 225 case).

## III. CONCLUSION

Falcon has prevailed on Counts I and II of its Complaint. The record date set for HoldCo's 2023 annual meeting violated 8 *Del. C.* § 213(a). The record date, annual meeting, and voting results from the annual meeting are invalid and void. Validation under 8 *Del. C.* § 205 is denied. Under 8 *Del C.* § 225, the HoldCo and OpCo Boards as they were composed before the December 6, 2023 director election are reinstated. The relief sought by Falcon is otherwise denied as unnecessary to resolve its Section 225 claim. The parties are directed to confer on a proposed form of order to implement this decision and to file it within ten days.